COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS




DAVID CRUZ,


 Appellant,


v.



THE STATE OF TEXAS,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-03-00313-CR



Appeal from the


409th Judicial District Court


of El Paso County, Texas 


(TC# 20020D05624) 



O P I N I O N


 David Cruz was convicted of capital murder. He was sentenced to life imprisonment. 
We reversed, holding that the trial court erred in denying Appellant's motion for mistrial. (1) The
State's petition for discretionary review was granted by the Court of Criminal Appeals, Cruz v.
State, 225 S.W.3d 546 (Tex.Crim.App. 2007), and that court vacated our judgment and
remanded for consideration of the Appellant's remaining nine issues. On remand, we find no
reversible error and we affirm the trial court's judgment.

 The facts of this case are detailed in our original decision. See footnote 1. Therefore,
they are omitted here.

 In his first issue, Appellant argues that the trial court erred in not allowing his trial
counsel to use a particular hypothetical as factual background to proposed questions during voir
dire. Prior to voir dire, Appellant's defense counsel informed the trial court that they had a
hypothetical they wished to pose to the jury. The hypothetical facts were: "Larry sits behind the
wheel of a car, Bob stands in front of the car, Larry's foot presses the accelerator and the car
moves forward hitting Bob and killing him." Defense counsel told the trial court that the
proposed questions were: "Is this a crime, what's the crime, do you need more facts, what do
you need to know, and then I'm going to talk about culpable mental states." Appellant's counsel
also submitted the hypothetical and the four specific questions to the trial court in writing.

 The State objected on grounds that the proposed questions were improper contracting
with the jury. In the course of arguing for use of the hypothetical and the questions, defense
counsel explained to the trial judge that they intended to tell the jury the hypothetical and pose
the questions before informing the jury about various culpable mental states and the State's
burden to prove state of mind. Defense counsel also argued that the questions would lead to a
valid challenge for cause. The court asked if the State would object if the defense first explained
the law requiring a culpable mental state. The State still objected, arguing that the fact-specific
hypothetical included facts not necessary to lead to a valid challenge for cause. The trial court
denied defense counsel's "request to use that fact situation."

Standard of Review

 The trial court has broad discretion over the process of selecting a jury. Barajas v. State,
93 S.W.3d 36, 38 (Tex.Crim.App. 2002); Allridge v. State, 762 S.W.2d 146, 167 (Tex.Crim.App.
1988), cert. denied, 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989). We leave to the
trial court's discretion the propriety of a particular question and the trial court's discretion will
not be disturbed absent an abuse of discretion. Barajas, 93 S.W.3d at 38. The trial court abuses
its discretion only when a proper question about a proper area of inquiry is prohibited. Id.

Commitment Questions

 A question is proper if it seeks to discover a juror's views on an issue applicable to the
case. Barajas, 93 S.W.3d at 38. A question can be relevant if it seeks to uncover grounds for a
challenge for cause. See id. at 39. However, an otherwise proper question is impermissible, if it
attempts to commit the juror to a particular verdict based on particular facts. Barajas, 93 S.W.3d
at 38; Standefer v. State, 59 S.W.3d 177, 181 (Tex.Crim.App. 2001).

 In Standefer, the Court of Criminal Appeals articulated a two-step test for determining
whether a commitment question is proper: (1) Is the question a commitment question; and (2)
Does the question include only those facts that lead to a valid challenge for cause? Standefer, 59
S.W.3d at 182. If the answer to the first question is "yes" and the answer to the second question
is "no," then the question asked is an improper commitment question and the trial court should
not allow the question. Id. at 182-83; Lydia v. State, 109 S.W.3d 495, 497-98 (Tex.Crim.App.
2003).

 A question is a "commitment question" if one or more of the possible answers commits a
prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a
particular fact. Standefer, 59 S.W.3d at 179. Commitment questions include those questions
that ask the prospective juror to set the hypothetical parameters for his or her decision-making. 
Id. at 180. Questions that commit prospective jurors to a position, using a hypothetical or
otherwise, are improper and serve no purpose other than to commit the jury to a specific set of
facts before the presentation of any evidence at trial. Atkins v. State, 951 S.W.2d 787, 789
(Tex.Crim.App. 1997).

 Not all commitment questions are improper. Standefer, 59 S.W.2d at 181. Whether a
commitment question is proper or improper depends on whether the question leads to a valid
challenge for cause. See id. at 182. Where the law does not require a commitment, a
commitment question is improper. Id. at 181. In order for a commitment question to be proper,
one of the possible answers to that question must give right to a valid challenge for cause. Id. at
182. Even if a question leads to a challenge for cause, the question may nevertheless be
improper if it includes facts in addition to those necessary to establish a challenge for cause. Id.
at 182. To be proper, a commitment question must contain only those facts necessary to test
whether a prospective juror is challengeable for cause. Id. 

 Appellant argues that his counsel was not permitted to ask proper questions based on a
fact situation necessary to explain the applicable law. In his brief, Appellant argues that the
requested questions were: (1) Is this a crime?; (2) Do you need to know more facts?; (3) From
these facts do you believe that the person is guilty of an offense without regard to the state of
mind?; (4) Do you still believe that even if the State fails to prove intentionally, knowingly, or
recklessly when his foot comes off the accelerator, if it was just an accident, then do you still
think that a crime is committed?; and (5) Do you agree with the law that says the State must
prove that the person acted with that mental state or do you not require that? With respect to
questions (3), (4), and (5), we find that Appellant's counsel did not proffer these specific
questions to the trial court. (2) Rather, his counsel argued that based on the hypothetical facts
proposed these areas of inquiry would then follow. The trial court denied defense counsel's
request to use the hypothetical facts, but did not rule on questions (3), (4), and (5), which
Appellant nevertheless asserts were purportedly requested. Therefore, Appellant failed to
preserve this portion of his complaint for review with regard to these questions. See Sells v.
State, 121 S.W.3d 748, 756 (Tex.Crim.App. 2003), cert. denied, 540 U.S. 986, 124 S.Ct. 511,
157 L.Ed.2d 378 (2003)(to preserve error, appellant must show that he was prevented from
asking particular questions that were proper).

 With respect to Appellant's complaint concerning questions (1) "Is this a crime?," and (2)
"Do you need to know more facts?," (3) these questions are commitment questions in that the first
question asks prospective jurors how they would resolve an issue (what actions constitute a
crime) based on a particular set of hypothetical facts and the second question asks prospective
jurors to set the parameters of their decision-making by asking what evidence they would require
to convict the accused. See Standefer, 59 S.W.3d at 179-80.

 Since the proposed questions were commitment questions, the next step in our inquiry is
whether the questions included only those facts that were necessary to establish a valid challenge
for cause. Here, defense counsel sought to present certain hypothetical facts in conjunction with
the proffered questions. These facts included that "Larry" was sitting behind the wheel of a car;
"Bob" was standing in front of the car; "Larry's foot presses the accelerator;" which caused the
car to hit and kill "Bob." A proper commitment question contains only those facts necessary to
test whether a prospective juror is challengeable for cause. Standefer, 59 S.W.3d at 182. In
Standefer, the Court in discussing the inclusion of facts beyond those necessary to establish a
valid challenge for cause, stated:

 For example, in Atkins, the prosecutor asked prospective jurors if they could
convict a person who was arrested while possessing, in his pocket, a crack pipe
containing a residual amount of cocaine. The State could have permissibly
questioned the prospective jurors about their ability to follow a law that holds a
person guilty of possession even though the possession involves only a residue
amount of the drug in question. But the State's question supplied facts beyond
what was necessary to sustain a challenge for cause (arrest, possession of a crack
pipe, item found in the defendant's pocket). These additional facts rendered
improper what otherwise would have been a proper question designed to assess
whether a prospective juror was challengeable for cause. 


Standefer, 59 S.W.3d at 182 (Internal citations omitted). 

 Appellant's proposed questions were requested along with particular facts (Larry, Bob,
Larry's foot presses the accelerator). Because the hypothetical facts proffered by Appellant's
counsel in conjunction with the proposed questions were not necessary to establish whether a
prospective juror was challengeable for cause, the trial court did not abuse its discretion in not
allowing them. Issue One is overruled.

 In Issue Two, Appellant asserts the trial court erred in not submitting the lesser-included
offense of felony murder by unauthorized use of a motor vehicle. Appellant was indicted for
capital murder and in addition to the charged offense, the trial court submitted the following
lesser-included offenses in the charge: murder; felony-murder by theft; and manslaughter. 
Appellant objected to the lesser-included offense of felony-murder by theft and the trial court
refused to submit Appellant's request for felony-murder by unauthorized use of a motor vehicle
as a lesser-included offense.

Felony-Murder by Unauthorized Use of a Motor Vehicle (UUMV)

 To be entitled to a charge on a lesser-included offense: (1) the lesser-included offense
must be included within the proof necessary to establish the offense charged; and (2) some
evidence must exist in the record that would permit a jury rationally to find that if the defendant
is guilty, he is guilty only of the lesser offense. See Rousseau v. State, 855 S.W.2d 666, 673
(Tex.Crim.App. 1993). The credibility of the evidence and whether it conflicts with other
evidence must not be considered and regardless of the strength or weakness of the evidence a
charge on the lesser-included offense must be given. See Saunders v. State, 840 S.W.2d 390, 391
(Tex.Crim.App. 1992).

 The State concedes that Appellant has satisfied the first prong of the test because felony-murder by unauthorized use of a motor vehicle, may in proper circumstances, be a lesser-included offense of capital murder by going up the ladder of offenses from theft, robbery,
aggravated robbery, and capital murder by aggravated robbery. See Neely v. State, 571 S.W.2d
926, 928 (Tex.Crim.App. 1978); Teague v. State, 789 S.W.2d 380, 382 (Tex.App.--Houston [1st
Dist.] 1990, pet. ref'd); see also Fuentes v. State, 991 S.W.2d 267, 272 (Tex.Crim.App.), cert.
denied, 528 U.S. 1026, 120 S.Ct. 541, 145 L.Ed.2d 420 (1999)(felony-murder can be a lesser-included offense of capital murder); Medina v. State, 962 S.W.2d 83, 86 (Tex.App.--Houston
[1st Dist.] 1997, pet. ref'd)(UUMV can be an underlying felony for felony-murder). The State
also concedes that Appellant has satisfied the second prong of the test because there was some
evidence, specifically Appellant's statement, which supports a possible interpretation of the
evidence that, although Appellant did not intend to deprive Mendivil of his truck, he did operate
it without Mendivil's consent and while operating the truck, unintentionally killed Mendivil. 
However, the State argues that Appellant has failed to demonstrate any harm from the trial
court's refusal to charge the jury on the lesser-included offense of felony-murder by unauthorized
use of a motor vehicle.

 When the trial court erroneously refuses to give an instruction on a lesser-included
offense, reversal is required if the error resulted in some harm to the accused. Saunders, 840
S.W.2d at 392; O'Brien v. State, 89 S.W.3d 753, 756 (Tex.App.--Houston [1st Dist.] 2002, pet.
ref'd). Here, Appellant was convicted of capital murder, although the jury was authorized to
convict Appellant for the lesser-included offenses of murder, felony-murder by theft, and
manslaughter. In Saunders v. State, 913 S.W.2d 565 (Tex.Crim.App. 1995), the Court
considered whether a jury's failure to convict for a lesser-included offense that was included in
the charge can render error in not submitting another lesser-included offense harmless. 
Saunders, 913 S.W.2d at 569. In Saunders, the Court noted that whenever a trial court has failed
to submit a lesser-included offense that was requested and raised by the evidence--at least where
that failure left the jury with the sole option of either to convict the defendant of the greater
offense or to acquit him, a finding of some harm is routine. Saunders, 913 S.W.2d at 571. The
Court recognized that there is a possibility that the jury, believing the defendant committed some
crime, but given only the option to convict him of a greater offense, may have chosen to find him
guilty of that greater offense, rather than to acquit him altogether, even though it had a reasonable
doubt that he really committed the greater offense. Id., citing Beck v. Alabama, 447 U.S. 625,
634, 100 S.Ct. 2382, 2388, 65 L.Ed.2d 392 (1980); see also Venhaus v. State, 950 S.W.2d 158,
163 (Tex.App.--El Paso 1997, pet. ref'd). The harm in failing to submit the lesser-included
offense is not, however, self-evident when another lesser-included offense was an option, but the
jury chose not to convict the defendant of that lesser-included offense. See Saunders, 913
S.W.2d at 572. The issue then is whether, on the facts of the case, there is a "realistic
probability" that the jury may have found itself facing the same basic dilemma as the jury did in
Beck, that is, the danger that it would convict of the greater inclusive offense because its only
viable alternative was to acquit. See id. at 573-74. If the option of finding that Appellant
committed a lesser-included offense given is palpably unlikely under the evidence, then we must
find harm, despite the jury's failure to find Appellant guilty of a lesser-included offense included
in the charge. See Venhaus, 950 S.W.2d at 163.

 In this case, the jury was charged on several lesser-included offenses: murder; felony-murder by theft; and manslaughter. Within Issue Two, Appellant argues that felony-murder by
theft was not a proper lesser offense in this case and that the instruction on murder should not
have been given either. Appellant also argues that under the lesser offenses submitted to the jury,
it "would have the unpalatable choice of ignoring the taking of the truck, (which he clearly did)
or find him guilty of capital murder." Appellant asserts that the only option for the jury to find
that Appellant took the truck, but did not steal it, and did recklessly cause the death of Mendivil--felony-murder by unauthorized use of a motor vehicle--was not submitted to the jury, therefore
the error was harmful.

 The record here fails to show a realistic probability that the jury was faced with the
dilemma described in Saunders. The jury found Appellant guilty of capital murder, which by its
verdict, it determined that Appellant intentionally killed Mendivil by running over him with a
motor vehicle while in the course of committing or attempting to commit an aggravated robbery
of Mendivil. Even assuming that the lesser offenses of murder and felony-murder by theft were
improperly submitted to the jury, the lesser-included offense of manslaughter was a viable and
reasonable alternative based on the evidence presented at trial. A person commits manslaughter
if the person recklessly causes the death of an individual. See Tex.Pen.Code Ann. § 19.04
(Vernon 2003). In his written statement, Appellant stated that he stabbed Mendivil while in the
truck and then struggled with him outside the truck. Appellant stated, "I tried to push [Mendivil]
off so that he can [sic] fall to the ground and I could get into the truck so that I can [sic] go
somewhere and call the cops." After he stabbed Mendivil again, Mendivil fell down and
Appellant got into the truck. Appellant then stated, "The truck was on so I decided to back out of
there. As I'm backing out, I noticed that I hit him. I put the truck on drive and moved forward so
I wouldn't hit him again." Following the incident, Appellant drove Mendivil's truck to various
locations during the course of the next six hours before leaving the truck by a park.

 Contrary to Appellant's contentions, the lesser-included offense of manslaughter was not
palpably unlikely under the evidence. If the jury believed that Appellant recklessly caused the
death of Mendivil, but did not intend to steal his truck, the manslaughter instruction presented a
viable alternative. Appellant asserts that the jury could not ignore the fact that Appellant took the
truck. We understand Appellant to be arguing that the jury was denied the chance to find that
Appellant's taking of the truck was a crime committed in addition to recklessly causing 
Mendivil's death. From the particular facts of this case, the jury would not necessarily have
found that merely taking, rather than stealing, the truck was a crime in itself. If the jury harbored
any doubts about whether Appellant intended to commit a robbery or theft, the manslaughter
instruction presented a viable alternative over finding Appellant guilty of capital murder or
acquitting him.

 We concluded there is not a realistic probability that the jury was forced to choose
between capital murder and acquittal because manslaughter was so unlikely under the evidence
presented. See Venhaus, 950 S.W.2d at 164. Although the trial court erred in failing to submit
the requested lesser-included offense of felony-murder by unauthorized use of a motor vehicle,
the error resulted in no harm. Issue Two is overruled.

 In Issue Three, Appellant contends the trial court erred in permitting the State to
introduce evidence of the victim's character even though the defense had not claimed that the
victim was the first aggressor. In Issue Four, Appellant asserts the trial court also erred in
permitting the witness testimony on the victim's character because the testimony was improper
reputation evidence. Since these points of error are related, we address them together.

Standard of Review

 The trial court has broad discretion in determining the admissibility of evidence. See
Levario v. State, 964 S.W.2d 290, 296 (Tex.App.--El Paso 1997, no pet.). Absent a clear abuse
of discretion, the trial court's ruling should not be reversed. See id.

Character Evidence under Rule 404(a)(2)

 After initially resting, the State was permitted to re-open its case-in-chief to present
evidence of Mendivil's character for being peaceful and nonviolent. Over Appellant's objection,
the trial court permitted evidence on the victim's peaceable character from two witnesses. In
pertinent part, Rules of Evidence 404(a)(2) provides: 

 (a) Character Evidence Generally. Evidence of a person's character or
character trait is not admissible for the purpose of proving action in conformity
therewith on a particular occasion, except:


. . .



 (2) Character of Victim. In a criminal case . . . evidence of peaceable character
of the victim offered by the prosecution in a homicide case to rebut evidence that
the victim was the first aggressor . . . .


Tex.R.Evid. 404(a)(2).

 Appellant argues that witness testimony about the victim's peaceful nature was
inadmissible because the defense had not attacked Mendivil's character such that Appellant had
opened the door to rebuttal evidence on the victim's character. Rather, Appellant asserts that the
State was the party that introduced the evidence that the victim was the first aggressor and then
sought to rebut that same evidence of the victim's character, which is impermissible under Rule
404(a)(2).

 As a general rule, it is improper for the State in the first instance to prove that the victim
was peaceable. See Armstrong v. State, 718 S.W.2d 686, 695 (Tex.Crim.App. 1985), overruled
on other grounds by, Mosley v. State, 983 S.W.2d 249 (Tex.Crim.App. 1998); Arthur v. State,
339 S.W.2d 538, 539 (Tex.Crim.App. 1960). Such evidence becomes admissible in rebuttal
when the opposite has been testified to in behalf of the defense, or when the defendant seeks to
justify the homicide on grounds of self-defense. See Armstrong, 718 S.W.2d at 695. We agree
with the State that a plain reading of Rule 404(a)(2) appears to indicate that the rule provides
only that such character evidence is admissible to rebut evidence that the victim was the first
aggressor--without specifically limiting the character evidence to instances where the first
aggressor evidence was introduced by the defense. However, some limitation on the State's
ability to introduce character evidence is nevertheless implied by the rule's characterization of
such evidence as rebuttal evidence. While the prosecution may not introduce evidence of the
victim's peaceable character in the first instance, Rule 404(a)(2) does not expressly prohibit the
State from offering rebuttal evidence once the defendant has raised the issue by claiming his
actions were justified on the grounds of self-defense. Such an interpretation maintains the
reasoning for the exception provided in prior opinions by the Court of Criminal Appeals. See
Armstrong, 718 S.W.2d at 695; Arthur, 339 S.W.2d at 539.

 Here, defense counsel during opening argument informed the jury that Appellant intended
to argue that his actions were in self-defense. During the State's case-in-chief, the State
introduced Appellant's voluntary statement. In his statement, Appellant indicated that he had
stabbed Mendivil in self-defense and left in the truck to escape from Mendivil's attack. Arturo
Casillas, Jr., one of the State's witnesses, testified that Appellant told him he had acted in self-defense. Defense counsel rested without introducing any evidence. Clearly, Appellant intended
to seek to justify the homicide on grounds of self-defense. The claim of self-defense was raised
by the defense in so far as Appellant's counsel had indicated that Appellant's actions were so
justified during opening argument. Since the State introduced Appellant's statement in its
entirety, which included evidence in support of his self-defense claim, Appellant was thereby
able to present his self-defense claim in closing argument without introducing any evidence at
trial on the issue. Under these circumstances, we cannot conclude that the trial court erred in
permitting the State to introduce evidence of the victim's peaceable character since Appellant
unambiguously sought to justify his actions on grounds of self-defense.

 In his fourth issue, Appellant asserts that the character evidence introduced by the State
was nevertheless inadmissible because the two character witnesses' testimony was not admitted
as reputation testimony. The record shows that the trial court ruled that one of the complained-of
witnesses, Maria Isela Franco, could not testify as a reputation witness. Therefore, Appellant's
complaint as to Ms. Franco's testimony is without merit. The trial court, however, did permit
reputation testimony from another character witness, Tracy Merworth, over Appellant's
objection. Ms. Merworth testified that she had worked with Mendivil from 1981 to 1989 at
Thomason Hospital and then again at Providence Memorial Hospital in 1992. Ms. Merworth had
known Mendivil for almost twenty years. The State prosecutor asked Ms. Merworth if she knew
Mendivil's reputation for being peaceful and nonviolent and she responded that she did. The
trial court overruled Appellant's objection that the proper predicate for the reputation opinion
had not been established. Ms. Merworth then testified that Mendivil's reputation for being
peaceful and nonviolent was good. She also testified that in her personal opinion, Mendivil was
peaceful and nonviolent. The State concedes that Ms. Merworth's reputation testimony was
improper, but argues that any error in allowing the testimony was harmless. See
Tex.R.App.P. 44.2(b). We agree.

 Under Rule 405(a), when character evidence is admissible, proof may be made by either
reputation or opinion testimony. See Tex.R.Evid. 405(a). In this case, Ms. Merworth provided
reputation testimony and her personal opinion as to Mendivil's peaceable character. Since
evidence of Mendivil's character as a peaceful person was properly presented to the jury,
Appellant was not substantially harmed by any error in admitting reputation testimony on the
same matter. Issues Three and Four are overruled.

 In Issue Five, Appellant contends the trial court erred in permitting the State prosecutor to
tell the jury panel during voir dire that the job of the prosecutor was to seek justice, whereas the
defense's job was to only protect the Appellant's rights. Appellant argues that the prosecutorial
comment implied that "the defense [was] trying to protect scum" and the defense was there "not
to insure justice be done." We disagree.

 During voir dire, the State prosecutor in explaining the role of the State to the jury stated,
"The role of the State is not to always seek a conviction. The role of the State is to seek justice." 
The prosecutor then stated that the role of the defense was "[t]o make sure I'm not doing
anything wrong and to protect their client's rights." Appellant objected on grounds that the
prosecutor's remarks on the role of the State was irrelevant and an attempt to curry favor with the
jury. Appellant also objected that it was an attack on counsel because it would lead to the
conclusion that defense counsel did not have a duty to see that justice is done.

 First, we find that the prosecutor's statements concerning the role of the State, were
correct statements of law. Article 2.01 of the Texas Code of Criminal Procedure provides that it
is the primary duty of all prosecuting attorneys, "not to convict, but to see that justice is done." 
See Tex.Code Crim.Proc.Ann. art. 2.01 (Vernon 2005); see also Beck v. State, 681 S.W.2d
825, 828 (Tex.App.--Houston [14th Dist.] 1984), rev'd on other grounds, 712 S.W.2d 745
(Tex.Crim.App. 1986)(informing the jury panel that a prosecutor is, under law, obligated to see
that justice is done cannot be prejudicial). 

 Appellant compares the prosecutor's remarks in this case to remarks made by the
prosecutor in Wilson v. State, 938 S.W.2d 57 (Tex.Crim.App. 1996), overruled on other grounds
by, Motilla v. State, 78 S.W.3d 352 (Tex.Crim.App. 2002). In Wilson, the prosecutor during jury
argument stated that his duty was to see that justice is done, but seeking truth and justice was not
important to defense counsel, who wished that the jury would turn a guilty man free. Wilson, 938
S.W.2d at 58-60. Unlike the prosecutorial remarks in Wilson, the remarks concerning the role of
the defense in this case in no way insulted or disparaged defense counsel nor did the prosecutor
accuse defense counsel of any unethical conduct. See Wilson, 938 S.W.2d at 59-60. We
conclude that the prosecutor's remark on the roles of the defense and of the State were not
improper statements and these remarks did not necessarily imply that conversely, the defense's 
role was not to see that justice is done. The trial court thus, did not abuse its discretion by
allowing the complained-of prosecutorial remarks. Issue Five is overruled.

MOTION FOR NEW TRIAL

 In Issues Seven and Eight, Appellant contends the trial court erred in not holding a
hearing on his motion for new trial and argues that the motion for new trial should have been
granted based on the State's alleged tampering with physical evidence. 

Background

 At trial, photographs and a videotape taken by the police were admitted into evidence,
which showed the condition of the victim's body and clothing as discovered by police in their
investigation of the death. During closing argument, both the State and Appellant's counsel
discussed the evidence regarding whether the victim's pants were zipped or unzipped. The first,
the prosecutor in discussing the requirements for self-defense, stated:

 The State: Again, what does his statement say? He said the victim had
his pants unzipped, that he was coming on. Ask for the
exhibit. Ask for the victim's trousers. They're zipped. 
The belt buckle is still fastened. That's the way they were
found.

 Look at the videotape of Mr. Mendivil lying in that road. 
His pants have been shredded by the force of that truck going over
him, but the belt is still fastened, the pants are still zipped up. So
there's another lie. 


Defense counsel responded in closing argument to the State's argument on this evidence, stating:

 Defense: What [Appellant] knew was he had a really big guy who
had unzipped his pants and had grabbed him, grabbed the
Defendant in the groin. I just went and checked. Those
pants are zipped. I want you to look at every photo that has
been introduced and I want you to look closely at the video
that the State gave you.

 You can look and see his pants were unzipped as he lay out
there. I want you to do that as part of your careful evaluation of the
evidence, and I want you to look at the photos and the video
closely. I submit to you that as he lay [sic] out there dead that
morning when the police found him, his pants were unzipped.

 Anyone, I mean anyone, and I'm not inferring or implying
anything about the State's conduct in this case, I'm not, I promise
you, but what I'm going to tell you is, anyone could have zipped
those pants up afterwards, after they were removed from the
decedent's body.


In the second, during prosecutor's closing argument, the State again urged the jury to consider
the evidence on the condition of the victim's pants, stating:

 The State: Other lies. Let's look at this. 'The guy unzipped his pants
and came towards me. He tried to grab me in the front area
and also tried to take my pants off.' Lots of different
evidence that tells you this is a lie, a bold-faced lie, first of
which is the photos, and you can look at them. You can
see--you can see that not only is his zipper zipped, the
button is fastened and the belt is buckled. You look at
these photos, you look at that video and you will see that he
never unzipped anything. And to suggest that somehow
Mike Mendivil, while he's being punched and stabbed, is
going to zip up his pants is ludicrous.

 Look at the evidence. It's not going to lie to you. Did he
ever unzip his pants? No.


Appellant filed a motion for new trial with the trial court, which was denied by operation of law. 
See Tex.R.App.P. 21.8(c).

Standard of Review 

 A hearing on a motion for new trial is not required when the matters raised in the motion
for new trial are determinable from the record. See King v. State, 29 S.W.3d 556, 569
(Tex.Crim.App. 2000); Reyes v. State, 849 S.W.2d 812, 816 (Tex.Crim.App. 1993). We review
the trial court's denial of a hearing on a motion for new trial under an abuse of discretion
standard. See Wallace v. State, 106 S.W.3d 103, 108 (Tex.Crim.App. 2003). We also review a
trial court's denial of a motion for new trial under the abuse of discretion standard. See Lewis v.
State, 911 S.W.2d 1, 7 (Tex.Crim.App. 1995).

Appellant's Motion for New Trial

 In Appellant's motion for new trial, Appellant alleged that he was entitled to a new trial
because: (1) exculpatory evidence was intentionally destroyed or withheld; (2) the verdict was
contrary to the law and evidence because relevant evidence was tampered with by the State; (3)
the State tampered with evidence, specifically, "the pants of the decedent, which were unzipped
at the time of the decedent's body was discovered and photographed by the police, were zipped
while in the custody of the state;" and (4) in the interest of justice. Attached to Appellant's
motion were affidavits from his trial counsel, attorneys Scott Segall and Bruce Ponder. Both
attorneys attested that they examined the physical evidence in this case before trial and observed
that the victim's belt was still buckled, although the leather belt was torn apart. They also
observed that the victim's pants were buttoned at the top of the zipper, but the pants were zipped. 
They attested that by trial, the pants were zipped, which allowed the State to argue in final
argument that Appellant's statement that the victim unzipped his pants before attacking him was
a lie.

 We agree with the State that the issue of whether the victim's pants were zipped or
unzipped when this body was discovered was readily determinable from the record before the
trial court. Appellant had alleged in his motion that the allegedly tampered with evidence, the
purported zipped up pants at trial, were unzipped at the time the victim's body was discovered
and photographed by the police. Numerous photographs and a videotape of the crime scene, 
showing the condition of the victim's body and clothing when he was discovered, were admitted
at trial and therefore appeared in the record. We conclude that no hearing on the motion for new
trial was required under these circumstances because the issue of whether the jury had been
presented tampered-with evidence, that is, zipped pants, was determinable from evidence that
already existed in the record.

Denial of Motion for New Trial

 We first respond to the State's contention that Appellant improperly briefed his eighth
issue by failing to present an argument as to why the trial court abused its discretion by denying
his motion for new trial. See Tex.R.App.P. 38.1(h). Appellant's argument for Issue Eight
consists of the following paragraph:

 Reference is made to the motion to abate appeal filed in this case which by
reference is made a part hereof. Such motion shows that the state tampered with
the physical evidence so as to contradict the statement of the defendant. Reversal
is required by the authorities cited in the motion. See Ex parte Brandley, 781
S.W.2d 886, 892 (Tex.Crim.App. 1989).


 In Appellant's motion to abate this appeal, Appellant sought an order from this Court to
abate the appeal and to remand the cause to the trial court to conduct a hearing on his motion for
new trial. We denied Appellant's motion to abate on November 25, 2003. After reviewing
Appellant's motion to abate, we find no argument at all in support of Appellant's contention that
the trial court abused its discretion in denying the motion for new trial. Rather, in the motion to
abate Appellant only provided argument in regard to the trial court's failure to grant a hearing on
the motion for new trial. However, it is clear that the trial court, in weighing the evidence in the
record on the condition of the victim's pants, resolved the factual dispute contrary to Appellant's
contentions. Since there was evidence in the record from which the trial court could have
reasonably determined that the victim's pants were zipped when discovered by the police, and
thus, not tampered with prior to trial, we cannot conclude the trial court abused its discretion by
denying the motion for new trial. Issues Seven and Eight are overruled.

 In Issues Nine and Ten, Appellant contends the evidence is both legally and factually
insufficient to sustain his conviction for capital murder. Specifically, Appellant asserts the State
failed to prove that Appellant murdered the decedent while the course of committing theft
because there was no evidence that he intended to deprive the decedent of property as defined in
Chapter 31 of the Texas Penal Code.

Standards of Review

 In reviewing the legal sufficiency of the evidence, we view the evidence in the light most
favorable to the verdict to determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
319, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); Burden v. State, 55 S.W.3d 608, 612
(Tex.Crim.App. 2001). We do not resolve any conflict of fact, weigh any evidence, or evaluate
the credibility of any witnesses, as this was the function of the trier of fact. See Adelman v. State,
828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v. State, 819 S.W.2d 839, 843
(Tex.Crim.App. 1991). Instead, duty is to determine whether both the explicit and implicit
findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light
most favorable to the verdict. See Adelman, 828 S.W.2d at 421-22. In so doing, any
inconsistencies in the evidence are resolved in favor of the verdict. Matson, 819 S.W.2d at 843.

 In reviewing the factual sufficiency of the evidence, we must determine whether
considering all the evidence in a neutral light, the jury was rationally justified in finding guilt
beyond a reasonable doubt. Zuniga v. State, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004),
overruled on other grounds by, Watson v. State, 204 S.W.3d 404 (Tex.Crim.App. 2006); see also
Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). There are two ways in which we
may find the evidence to be factually insufficient. Zuniga, 144 S.W.3d at 484. Evidence is
factually insufficient when the evidence supporting the verdict, considered alone, is too weak to
support the finding of guilt beyond a reasonable doubt. Id. Evidence is also insufficient when
contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt. See id. at
485. However, in our factual sufficiency review, we must give appropriate deference to the jury
and should not intrude upon its role as the sole judge of the weight and credibility given to
evidence presented at trial. See Johnson v. State, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); Clewis,
922 S.W.2d at 133. Accordingly, we are authorized to set aside the jury's finding of facts only in
instances where it is manifestly unjust, shocks the conscience, or clearly demonstrates bias. 
Clewis, 922 S.W.2d at 135.

Intent to Deprive

 Appellant was indicted for capital murder. To obtain a conviction for capital murder
under Section 19.03(a)(2), the State in this case was required to prove that Appellant
intentionally or knowingly killed the decedent in the course of committing or attempting to
commit robbery. See Tex.Pen.Code Ann. § 19.03(a)(2)(Vernon Supp. 2007), § 19.02(b)(1)
(Vernon 2003). A person commits robbery if, in the course of committing theft, as defined in
Chapter 31 of the Penal Code, and with the intent to obtain or maintain control of the property,
he intentionally causes bodily injury to another. See Tex.Pen.Code Ann. § 29.02(a)(1)(Vernon
2003). A person commits aggravated robbery if he commits robbery and causes serious bodily
injury to another. See Tex.Pen.Code Ann. § 29.03(a)(1). One of the elements of theft, which
must be proven to establish a robbery offense is that the accused intended to deprive the owner of
property. See Tex.Pen.Code Ann. § 31.03(a)(Vernon Supp. 2007). Under the Penal Code, the
definition of "deprive" includes: "(A) to withhold property from the owner permanently or for so
extended a period of time that a major portion of the value or enjoyment of the property is lost to
the owner;" and "(C) to dispose of property in a manner that makes recovery of the property by
the owner unlikely." See Tex.Pen.Code Ann. § 31.01(2)(A), (C).

 Appellant argues that there was no evidence produced at trial that showed he intended to
permanently withhold property from Mendivil or that he intended to keep Mendivil's property for
so long a period that it lost its value. Rather, the evidence showed that he abandoned the pickup
truck within hours of the incident. Appellant further points out that there was no evidence that
Appellant was aware of the items in the truck when he drove away nor evidence that the decedent
had any money.

 To prove the element of intent to deprive for theft, the State does not need to prove that
an actual deprivation occurred. See Rowland v. State, 744 S.W.2d 610, 612 (Tex.Crim.App.
1988). What is relevant is the defendant's intent at the time of the taking, rather than the actual
length of deprivation. See id.; see also Griffin v. State, 614 S.W.2d 155, 159 (Tex.Crim.App.
1981)(The element which must be proved is not a deprivation, but the defendant's intent to
deprive at the time of the taking). Such intent may be inferred from the words, actions, or
conduct of the accused. McGee v. State, 774 S.W.2d 229, 234 (Tex.Crim.App. 1989); Banks v.
State, 471 S.W.2d 811, 812 (Tex.Crim.App. 1971). A theft conviction cannot be obtained on
proof that the defendant intended only a temporary withholding of the property. Griffin, 614
S.W.2d at 158. However, the fact that the deprivation later became temporary does not
automatically mean that there was no intent to deprive permanently or for so long as to satisfy the
statutory definition. Id. at 159, citing Draper v. State, 539 S.W.2d 61, 68 (Tex.Crim.App. 1976).

 Viewing the evidence in a light most favorable to the verdict, the evidence shows that
Appellant got into Mendivil's pickup truck and while driving away from the area, ran over
Mendivil. When the truck became stuck on a cement barrier, several witnesses came over to
assist Appellant. Appellant told one of the witnesses that he had recently bought the truck. In
his statement, Appellant stated that he drove the truck home around 1 a.m. After his sister told
him to leave the house, he drove out to Fabens and Tornillo for the next two hours. Appellant
then returned to El Paso, drove to the house of his friend's sister, drove to his friend's house,
drove the sister back home, and then "cruised around for awhile" with his friend. Appellant
returned home around 7:30 a.m. Appellant then left his home again and took his friend home. 
Appellant returned home again and then left to give one of his sisters a ride to her friend's house. 
When he returned home for a final time, he parked the truck at a nearby park and left it there. 
Appellant was later arrested in his home. Appellant admitted that he had taken certain items
from the truck, which he had thrown in the trash. Appellant had also taken Mendivil's cell
phone, but did not know where he had left it. From this evidence any rational trier of fact could
have inferred that Appellant intended to keep Mendivil's property, specifically his truck, for an
extended period of time, if not permanently. Appellant represented to another that the truck
belonged to him. Appellant drove the truck to numerous destinations, both outside and inside of
El Paso. While Appellant left the truck at a nearby park and went home, his statement indicates
that he then remained at home until his house was raided and he was arrested. We conclude that
any rational trier of fact could have found beyond a reasonable doubt that Appellant committed
capital murder by running over Mendivil in the course of aggravated robbery and had the intent
to deprive Mendivil of his property at the time of the taking.

 After considering all the evidence in a neutral light, we conclude that the evidence
supporting the verdict, including the inferential evidence of Appellant's intent at the time he took
Mendivil's property, is not too weak to support the finding of guilt beyond a reasonable doubt. 
Moreover, we conclude that the contrary evidence is not so strong that guilt could not be proven
beyond a reasonable doubt. Having found that the evidence was both legally and factually
sufficient to sustain Appellant's conviction, we overrule Issues Nine and Ten.

 Having overruled all of Appellant's remaining issues for review, we affirm the trial
court's judgment.



November 15, 2007

 DAVID WELLINGTON CHEW, Chief Justice


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)
1. Cruz v. State, 224 S.W.3d 226 (Tex.App.--El Paso 2005, pet. granted).
2. From the record, it is clear that Appellant's counsel was not prohibited from discussing
the applicable law and requisite culpable mental states of intentional, reckless, and criminally
negligent.
3. As already noted, defense counsel proffered four specific questions: (1) Is this a crime?;
(2) What crime?; (3) Do you need more facts?; and (4) What do you need to know? On appeal,
Appellant's purported second question appears to be a composite of questions (3) and (4).